We already know we're taking the cases out of turn, so we will begin with the matter of United States v. Tolliver. As everybody knows, Judge Nygaard is coming in via video. Judge Nygaard, good morning. Good morning, Judge Bardeis. Good morning, Judge Greenaway. How are you today? I'm well, thank you. All right, let's proceed. Mr. Salzburg. Thank you very much. Good morning, Your Honors. May it please the Court, Robert Salzburg on behalf of the government. I'd like to reserve three minutes for rebuttal. Yes, sir. Your Honors, the District Court erred in granting a new trial on Ms. Tolliver's 2255 motion. The facts that were submitted by Ms. Tolliver in the form of affidavits were insufficient on their face to show a reasonable probability that the result of the trial would be different if those facts had been presented to a jury. And on that basis, the Court erred. We have suggested that an evidentiary hearing may be conducted, which would allow Ms. Tolliver to further develop the facts. But based on the record we have now, it's insufficient. Is the critical issue that there are disputed issues of fact, or do you go directly in your view to the reasonable probability test? Well, our primary argument where we started in the District Court is we go straight to the test because we know from the statute that the Court must hold a hearing if there are disputed facts. But we also know from this Court's case law that if you can accept the facts as true and see that prejudice is not established, you can stop right there. That's what the Supreme Court said in Strickland. So that's our first critical point, to use your term, Your Honor, is that we look at these facts and accept them as true, and they're not sufficient. So we're bending over a bit and saying, well, we could see some conceivable scenario in which maybe you could put these witnesses on the stand and develop something. But that obviously would require an evidentiary hearing. But if we accept this petition on its face and under the applicable rules, the District Court should have just denied it on the prejudice prong because you can't meet the reasonable probability test. If you put aside the prejudice prong for a moment, would you agree that the performance of counsel is deficient? Well, not yet. The counsel has to investigate, obviously. And if counsel did not investigate, what that does is present a serious concern. I mean, doesn't the record show that, for the most part, there was no investigation? Well, I can't say that. The problem here, Your Honor, is that we just have affidavits. And the Supreme Court and this Court have said repeatedly, going back for a century, that habeas matters are not decided on affidavits. So, yes, we have this very brief affidavit from Mr. Cuneo, the trial counsel, that, like I said, raises concern in which he says, I didn't have an investigator. I didn't know about these facts that are being presented to me now. But we still need to know what is it, if anything, he could have found out had he done an investigation. And all they've set forth as the answer to that question. Well, he might have found out that there were two other persons who worked in the bank that had a motive for defrauding the bank. Well, he might have, but they haven't shown it yet. And so what they submitted, they have the burden here, what the defense submitted is that Ms. Anderson, the bank manager, the only other person who was present on every day that the crime was committed, had financial issues that were resolved, that were gone. And then they showed that this other person, who wasn't even there every day, had a financial issue four months later. So that's the showing right now. And so I can't concede even in effectiveness on those facts. I can agree that if we want to be maximally fair here and go back to the district court, we could have a hearing to see if there's more to this story than these debts that were settled a year earlier and four months later. Is there any circumstance that you can concede where a hearing wouldn't be required? Yes. Well, certainly if there's a legal issue, and we cited a couple cases in our brief. The cases are few and far between in which habeas relief is granted without a hearing. Habeas relief is often denied without a hearing, and that's anticipated in the statute. But we can't find any prior case in this circuit in which habeas relief was granted without a hearing. We found it in a couple other circuits where there was a legal issue, where there was just a plain legal error and there's no reason to develop any facts, but nothing like this case where you have these disputed concerns regarding other people, including one witness who wasn't even there. It's interesting, though, because the government didn't request a hearing in its response to the motion. Right, and so it's an odd position. I mean, we're being taken to task for, I think, going beyond what we need to offer, which we did in our motion for reconsideration. Our initial position is still our position, which is that this petition was insufficient on its face and therefore should be denied without a hearing. When the judge, to our surprise, granted habeas relief on the basis of facts that, A, don't show ineffectiveness, and B, have not even been tested and shown to even be available. I'll give one example of that in a minute. That's when we said, look, you can't do this without a hearing. But our first position is still the same, which is they have the burden, they have to prove ineffectiveness and prejudice, and these facts don't make it out. Just to give one example, we've talked about the financial issues of those other two witnesses. The other thing that the district court relied on was this notion that there are other people in the conspiracy who now say that they would say that they did not know Tolliver. Now, we say that doesn't matter because the jury was already told that, so that really settles that issue. But it's interesting that the court here is relying on affidavits, two from convicted criminals who are in prison and one from an investigator who says, I've talked to these six other people and here's what they would say. I've never seen a case in which habeas relief is granted on the basis of such affidavits. That's the example of the district court's error in this case in simply looking at the facts that are presented to it and saying, okay. Isn't part of it, though, that that's an extraordinary circumstance when you think about it? I mean, co-conspirators who are already convicted have every incentive to say, yeah, sure. She was involved or whatever. Isn't that part of it that it's just such an extraordinary circumstance that it led the court to say this is much more straightforward than it might otherwise? Well, sure. It's very probative, Your Honor. But the important point there is that we told the jury something even more extraordinary. The government told the jury not about these six people or eight people maybe that they've identified. The witness testified that there are 32 people who have been arrested and prosecuted in the case as of that date. There are actually more that came later. And the investigator said of these 32 people, none have identified Tolliver. So that's why this ineffectiveness claim really should not go anywhere, is that the jury was already told what they now say they want to tell. But I'm just highlighting the way in which the district court in this one errant instance approached this matter in just accepting facts and affidavits. You know, just another example, Bell and Russell, who are the two leaders of this conspiracy, they are in prison now, and Your Honor is right. We would look at that and say, what are their incentives? But it's important. You have to look back. You have to look at what were the facts at the time that the attorney acted, because, of course, we don't evaluate ineffectiveness in hindsight. This trial took place in March of 2009. Russell and Bell had not even been indicted yet, let alone convicted and been in the situation they're in now. So you can't even assume that these people would show up. Are Bell and Russell going to come in and testify and say, yes, I ran this conspiracy, and she wasn't part of it, and I'm standing by for you to hand me the indictment whenever you like? Of course that wasn't going to happen. This is just a completely insufficient presentation that was made in this 2255 motion, and we're saying the only way to salvage it is to have an evidentiary hearing and see if there's more. But if you think we've given that up and there shouldn't be a hearing, then fine. Then this just simply has to be denied. You can't grant a new trial and vacate the verdict of a unanimous jury on the basis of these flimsy facts. Why isn't it sufficient, though? The affidavits establish that there are two bank employees, one of which was present at all times that the customer accounts were accessed, and that person, according to Toliver, had access to her password. And also she presented an affidavit that she apparently walked away from her computer, left it open so that there was visual access to the password. If that's what Judge Schiller was looking at, why isn't that sufficient? It was apparently uncontested. Well, it's not uncontested. I mean, that's the problem here is that these are just affidavits. And the Supreme Court, you know, we've decided a case from 1941, says you cannot decide a habeas case based on affidavits. What was the government's response in the district court? Was it basically that's not so? Well, no, our position was that's not sufficient because there is, other than Ms. Toliver's new affidavit that says she let her password go out all over the place and that anybody could have had it and that Anderson had access to it, that's contradicted by all the evidence in the record, including her own statement. She made a statement to investigators on the day she was dismissed in which she said she followed the bank's rules and did not give her password to anyone. But it's not just her word. They had her logbook where she had written down passwords. And very conspicuously, this password was not in it. She was following the rules with regard to this key system of the bank. So that's all there is. Every other bank witness testified at trial. I think seven employees of this branch testified that they all followed the rules and none sought. I could go on about how implausible her testimony is. She said she couldn't remember her password. We know from every bank employee who testified that they were required to input this password anywhere between 10 and 50 times a day. So it's simply incredible if someone is doing that with the same password and can't remember it and then she says is being kidded about it by other people. This is not by any stretch sufficient. The Supreme Court in the Harrington case, which this court has since cited, but I think it was in 2011, in the Harrington case, the Supreme Court said that to prevail on this basis, the probability of a new trial can't just be, of an acquittal rather, can't just be conceivable. It has to be substantial. And all that's being offered here is conceivable. Maybe she had a debt she settled a year ago and therefore she still has debts now. Maybe another lady who wasn't there every day had a debt four months later and it had started earlier. Maybe Toliver really would testify and say something was contradicted by all the evidence at trial. This is not enough. And that remains our position with respect to the case. The only way in which you can develop this further is if you somehow develop with Anderson that she really did have continuing financial problems other than the debt she had paid. But it's kind of shocking to say that because someone had a credit card debt and missed a few mortgage payments a year earlier, that that means you have a motive to steal, putting aside the fact she didn't even have the opportunity to steal. I think there are millions of Americans who would be quite surprised at that notion that having a credit card debt and carrying a balance means you now have a motive to steal from your employer. That's remarkable. So if we look at that in the Harrington concept of what is substantial and not conceivable, we're nowhere near it. And that's the reason that the district court erred in this matter. What would be the best standard for when to determine that a hearing, a factual hearing is required in a 2255 case? Well, it's required where there are disputed facts. Any disputed facts? Disputed facts that, if shown, would justify relief. Justifying the trial. Right, and that's why, as I said earlier, most, I think most, I haven't done a calculation, but I think most habeas matters are dismissed without a hearing because you just look at the facts as they're presented and see that it's not enough. Strickland expressly invited that. Justice O'Connor said in Strickland that she anticipated that there would be many matters in which it's just much easier for the court to go to prejudice and not even deal with the disputed factual issues. So that's usually how it plays out, and it very well should have played out that way here. Thank you. Mr. Souser, one second. Judge, do I have any further questions? I have none, thank you. Thank you. Thank you, Mr. Souser. Mr. Herring? I'm sorry, wait a second. Mr. Stigler, I'm looking at the first case. May it please the Court, Matthew Stigler here on behalf of Regina Tolliver, who I'm pleased to say is here in the courtroom today. She was released on bail after the district court's ruling. Our position is that the ruling below should be affirmed because the evidence against Tolliver was weak, because the prejudice from counsel's total failure to investigate here was clear, and because Judge Schiller properly decided this case on the basis of the record that was before him rather than holding an evidentiary hearing. There really was a material dispute of facts, especially with respect to motive, especially with respect to access to passwords. I mean, she told an investigator that she never shared a password with anyone, but suddenly the information appears before Judge Schiller that others had access, specifically Ms. Anderson, possibly Ms. Carter. Isn't that a substantial dispute of facts that would warrant a hearing? I don't think it is, Your Honor, but I've got a threshold argument to make in response to that. I mean, I'm happy to talk about the merits and whether there's a disputed issue, but I think there's an important issue which the government hasn't really addressed, which is what the standard is that this court would review that question of whether or not the affidavits were enough, whether or not a hearing was required. Because the government's position here, it wasn't simply we should win without a hearing, but in their response to the, in their answer to the amended 2255, and I'm referring to page 704 of the appendix, the government said the ruling here should be summarily denied without a hearing, or that a hearing, and this is the critical part of it, that a hearing, if the court finds it appropriate. You mean the ruling reversed without a hearing? That the motion should be summarily denied without a hearing. The motion denied, all right. Or that a hearing, if the court finds it appropriate, be held solely on Toliver's claim that she was denied her right to testify by trial counsel. So the government's position in district court before the district court ruled was if you're going to, we don't want you to hold a hearing, but if you're going to hold a hearing, the only thing that you should hold that hearing about is this other issue that ended up not being a basis for the district court's ruling. However, apart from the request, isn't it incumbent on a district court judge to conduct a hearing whenever there are material issues of fact? Well, I mean, I think the district judge here was entitled to take the case as it was presented to him. The petitioner was saying that, was asking the court to grant relief without a hearing. The government was asking the court to decide this case without a hearing. And now, as the government's position now, after the district court ruled and in this appeal, if the government's position is, oh, actually, the affidavits aren't enough, you can't accept them, you have to condemn the person. You know, is this case so, you know, Mr. Zalzman said something quite extraordinary, right? He said he couldn't find a case. That might be the first time I've heard him say that. You know, so he couldn't find a case. Can you find a case to give us some guidance with this set of facts where, you know, we have a reasonable probability standard, we have disputed issues of fact or genuine disputes? Well, but my position, the answer is no. And I can't find a case where a defendant was convicted on evidence that was this insubstantial where counsel didn't do an investigation to come forward with it. You need to look harder. But again, my position here is that the way that the court needs to look at this case is through the lens of either forfeiture or plain error. Because their argument in district court was a legal argument, then ultimately what we're looking at here is, at best, whether or not the district court committed plain error in deciding it on this basis. And that argument has to fail. I mean, I don't think there was any clear error here. And I will get to that argument and explain that. But the clearest route to denying the government's position about the evidentiary hearing is at step three, a plain error analysis. It's the government's burden here to come forward and say that this was plain error and it affected our substantial rights. The government had a burden to show if they're saying that the denial of the hearing was improper, it's their burden to show how that hearing would have made a difference. They have to show what the evidence was. But when you look at the case law and there are no cases in which there are disputed facts and there's not a hearing, how much further do you want us to look? I mean, what is it about this case that says a district judge who upsets a jury verdict, we should, in this hideous context, not have an evidentiary hearing and lend our informator to that procedure? Because there were no disputed facts in this case. Because the material facts were not disputed facts in this case. The key evidence on which the district court granted relief here was documents. It wasn't witnesses. It wasn't credibility. It was documents. It was the court record about the mortgage foreclosure suit that was brought against Angela Anderson that was a year before these crimes happened. It was the judicial records about the credit card suit that was brought against Angela Anderson. All of that was to show lack of motive, or that somebody else had a motive to commit the crimes. Well, that's right. But those records. But aren't those facts? Isn't that a factual dispute? I mean, she told the investigator one thing, and now she wants the court to believe something else. Our position, Your Honor, is that it's not a factual dispute because the government isn't disputing the accuracy of those records. They're disputing the inference that can be drawn from those. See, one thing is if you had a document which said, I did it, by the two persons we're talking about. Each of them, there was a document that said, I did it. They signed it, dated it, certification. It would be difficult for them to say these affidavits have no meaning, right? Maybe you could only draw one inference. Then you'd get into questions of duress and other things, right? But you're asking us to look at the documents that were posed, which are equivocal depending on what inferences you want to draw from them. And if they're equivocal, then how can you come to the conclusion that it is other than a disputed fact that's presented? In most cases, I think that would probably be true. In most cases, the bare records themselves wouldn't be enough to carry the burden. But this is a case where Judge Shiller, and I think this is really the key to the merits of the issue, Judge Shiller made a finding of fact here that the conviction was only weakly supported by the evidence. It's a finding of fact that the government doesn't contest. He was uniquely well-supported to make that finding of fact. He was the judge who provided the trial. He knew this record as well as anybody. His finding of fact is that the conviction was weakly supported. And that's directly relevant to the prejudice determination because this court has said that the prejudice determination in any context is not stringent. Deficient performance is stringent. Prejudice is not stringent. But in particular, when you have a case where the conviction is weakly supported, then that standard is even lower. How do you meet reasonable probability of a different result? Well, in two ways. First, with the evidence that came in about the co-workers. The fact that they had these serious debts, and I would disagree with the government's characterization about the seriousness of those debts. This wasn't just her carrying the balance on the credit card. This is three months of being not able to make her mortgage payment and having the bank foreclose on her house, filing a suit against her. That suit lasted for five months. And then that was followed up with his credit card suit, which began earlier, and this also began in 2005, and it's still around in 2007, less than a month before the crimes actually happened. How are those unequivocal so that you want us to conclude that they don't amount to disputed facts? I mean, okay, a possible inference is the one that you want us to draw. It's not the only inference. Well, absolutely. And if our burden was to prove that Angela Anderson was guilty beyond a reasonable doubt, we've certainly failed to do that. But what we have here is evidence that given the weakness of the case against Tolliver, this is evidence that if company counsel had presented, he would have said, look, they don't have any motive on Regina Tolliver. They don't have any eyewitnesses. They don't have any paper trail. They scour her records. They don't have any sign of this money coming in. They don't have anything on her. But look at the co-workers who were in the same small office, who were on the same computers, and they had serious debts. You're making a good argument. It sounds interesting. But how does that lead us to the conclusion that, oh, my God, this is so good that we don't need an evidentiary hearing? But my real point is that it doesn't have to be all that good under this court's case law. I mean, I think it is really good. I'm not trying to say that this is small evidence, but it doesn't have to be all that good under this court's case law. The threshold for proving prejudice … You mean the cases that say that, you know, sure, let's grant it without an evidentiary hearing. Well, but the threshold for proving prejudice in this case is about as low as it gets in the 2255 case, in light of the district court's finding the fact that the government isn't challenging here about the weakness of the evidence. All they have is their passport. There is a case maybe you can comment on, but I don't know if you're familiar with Solis v. United States. I'm sorry, what's that? Solis, S-O-L-I-S. The site is 252 3rd at page 289. I'm sorry. The name removes the doubt, but that's all I can do. 2001 case. That's the only response I can give. Here is the quote. It's irrelevant whether the government or the petitioner requested the hearing because 2255 requires the district court to hold a hearing sua sponte when the files and records do not show conclusively the petitioner is not entitled to relate. Well, so there is a responsibility on the part of the court sua sponte to conduct a hearing. Well, I disagree with that, Your Honor, because I think that what the ‑‑ You disagree with the obligation on the part of the district court to sua sponte to conduct a hearing? I think that if there is an obligation for the court to sua sponte to hold an evidentiary hearing here, that that obligation is in a case in which it's clearly shown that there is a material disputed fact. And the government hasn't come forward with any material disputed facts. The government has not come forward with evidence. They're not saying that these debts didn't exist. They don't have any evidence that these debts didn't exist. They don't have any affidavits from Angela Anderson that say, oh, no, wait, I actually was in great shape financially. They haven't come forward with any evidence which puts those facts in dispute. All that the government has at this stage ‑‑ Isn't it Ms. Toliver who is creating a disputed issue of fact by saying, as we discussed before, I shared my password with another worker? That wasn't, if I'm not mistaken, the evidence presented at the trial. But the district court didn't rely on that. It didn't rely on any disputed evidence with respect to that. The district court didn't say I win because I signed it. What did the district court do? The district court, as I understand it, commented on the strength of the case and said this case was weakly presented, and therefore you're entitled to 2255 relief. Well, the district court said it was weakly presented, so therefore under Branch v. Sweeney the burden for proving prejudice is lower than it would be in a typical case. And let's look at the new evidence that was presented. And we've got this evidence shown. All the new evidence is doing is disputing what's been presented. I feel like there's a disconnect here, right? So the government presented whatever did at trial. You've now presented what you've presented. I'm not going to go over the evidence, right? That creates a dispute, right, that has to be resolved in an evidentiary hearing. I mean, what we'd have to see, based on what you presented, is this was what was presented at trial. And now we've got all of this evidence that we're presenting now that's so incredible that it dwarfs what was presented at trial in such a way that it's so clear that anyone could see it and it meets the prejudice prong such that you'd say there's a reasonable probability of a different result at trial. Do you feel that the evidence that you've presented with regard to those two other employees is such that that's the conclusion that we should come to and that we should likewise say, because of that, no evidentiary hearing affirmed? Judge Shiller knew this record better than anybody. And his finding is that it was clearly sufficient. His evidence was clearly sufficient in order to establish prejudice. And maybe it's helpful if I talk a little bit about the evidence with respect to the co-conspirators, because I think that evidence is equally important here. You did hire an investigator of your own, Diane Cowan, in order to find out if anyone knew Ms. Toliver. Yes, Your Honor. And therefore got her to use her password, et cetera. And Ms. Cowan's affidavit essentially was, I talked to no one who knew Ms. Toliver. But you presented that to the district court. That's right. To convince the district court that no one was aware that Ms. Toliver was working in the bank and that she would therefore use her password. And what we showed there was dramatically different. It went dramatically beyond what the jury heard at trial. The government's position is, well, they already heard all that before. But you did that with a view towards creating that factual dispute and to show that her counsel in not doing the same work that you did was deficient, and that deficiency was prejudicial. But, again, I would say the same thing here. We were not creating a factual dispute with respect to that evidence. There was no evidence that said that these eight members of the conspiracy, every identified member who had contact with the bank employees, there's no evidence that said, yes, those people said that Regina Toliver was the bank insider at the King of Prussia branch. We're not conflicting with what was presented. But what we're doing is transforming what was presented, because what was presented in 2255 is now we've talked to all those people. The government's position at trial was, well, the investigation's ongoing. We just haven't, you know, we haven't proven that link yet. I thought Mr. Zausman's point was slightly different, and that is it's not news because we conceded it at trial. Right. But what they conceded at trial, all that the jury knew at trial, was that that link hadn't been established yet. And that was a point that the government's expert was really very careful to make. Nobody ever said that there were witnesses who had contact with bank employees who said that they don't know Regina Toliver. That was never said at trial. All that was said at trial was that there were these two, the only, all that the jury knew was that there were these two check runners, people who never knew the bank insiders by the government's undisputed testimony, these two check runners who had identified Regina Toliver. Now the jury knew that there were five members of the conspiracy, five of these ringleaders, second tier people who did have contact with the bank members, who had been arrested at the time of the trial. But that's all that the jury was told was that they were arrested. There was no information presented to the jury about whether they'd been interviewed, whether they'd said anything about their ties, and they certainly weren't ever told, yes, these people said we don't know Regina Toliver. And that was the missing piece, and that's the undisputed evidence that was then presented. Mr. Stiegler, thank you very much. Thank you. Mr. Salzman. Just a few quick points, Your Honor. We do disagree with this notion that the evidence weakly supported the conviction, and of course we take that on. That's what we're commanded to do here, which is weigh the trial evidence against this new evidence that's being presented. There may not have been a lot of evidence. This wasn't a long trial. But to say this was weakly supported is another error. Her employee password was the only one used to access these seven accounts. Every time within hours of that happening, or roughly, somebody then called the bank to check on the balance so that they could put this check fraud scheme into play. Hers was the only password. All the other people in the bank were instructed not to share their password. Everyone said they followed that. Ms. Toliver herself said she followed that when she was first investigated. That's the case. That is not a weak case. That's what led this court, I believe it was Judge Sirica who wrote the opinion, to affirm the conviction on that basis. That's what we're weighing against. And so then we weigh against that the new evidence being presented. The co-conspirators, again, there is nothing new here. This notion that what they have now is dramatically beyond is not correct, even if they have it, which we don't know. They're relying on affidavits here. They're relying on affidavits of six or seven convicted people, several of whom wouldn't even sign an affidavit when they were asked to. Again, I've never seen a habeas petition granted on the basis of such evidence. But it's not new evidence because the jury was already told. Carter, I don't need to talk about more. She wasn't there. And Anderson, again, she has a $5,000 credit card debt a year and a half earlier that's paid off by the time of the crime. She has a much smaller mortgage debt that's paid off a year before. I know the matter was resolved, but how do you know that it was paid off? Well, we don't actually. The complaint was withdrawn. That's a very good point. It's also very possible. You know, we're all talking about what's conceivable here. It's very possible that it wasn't even a real death and that she was able to persuade the plaintiff of that and those cases went away. It's also possible that she negotiated a settlement. Absolutely. She would be paying monthly on into the future. Absolutely. We can speculate here forever. But if we accept what was submitted at the time that they had the burden, it doesn't show that against that trial evidence, which was good enough for the jury, good enough for this court, that it's reasonably probable it would produce a different result. If we want to be maximally fair here, which I think is the right thing to do, and it's why we suggested it, let's have a hearing. Let's see if there's more. Because what they have now is not sufficient. Thank you very much. Thank you, Mr. Souser. Thank you very much. Judge Nygard, anything further? No, I have nothing further. Thank you. Thank you. Thank you both for your excellent arguments. We'll take the case under advisory.